[Civil No. 4545. Filed March 27, 1944.]

[147 Pac. (2d) 491.]

M. E. ROBSON and J. ELIZABETH ROBSON, His Wife, Appellants, v. D. DAILY, Surviving Partner of the Partnership Doing Business Under the Name of DAILY & BOYD, Appellee.

Mr. Richard H. Chambers and Messrs. Cusick & Lyon, for Appellants.

Mr. Ashby I. Lohse and Mr. W. W. Quesnel, for Appellee.

ROSS, J.—The plaintiff, as surviving partner of the partnership of Daily & Boyd, commenced this ac-

tion against M. J. Robson and J. Elizabeth Robson, husband and wife, to recover on the latter's joint promissory note dated August 6, 1937, for $250, bearing 6% interest, due three years after date, and payable to plaintiff partnership.

Defendants, in their answer, admit the execution of the note, and that it has not been paid, except the interest, which they admit was paid by them to and including July 6, 1940. They allege that said note was given by them to plaintiff as a part payment for lot 16 of Amphitheatre Acres Addition to the city of Tucson, which defendants were buying under a contract from Edmund S. Tourigny and wife, for a consideration of $2,500, payable $250 in cash and $250 in note to Daily & Boyd "real estate agents," and the balance in installments of not less than $25 per month.

Defendants further allege in their answer that the deceased partner Boyd, of the firm of Daily & Boyd, who conducted the transaction "represented to defendants that a certain well located upon said lot 16 . . . was drilled to a depth of 138 feet, and that the well was dug and cemented for the first 40 feet below the surface of the ground. After entering into said contract . . . (to purchase lot) defendants discovered that said well was dug to a depth of 30 feet, and cemented to a depth of only 10 feet below the surface of the ground instead of 40 feet as represented, and defendants also discovered the well was not drilled to a depth of 138 feet, but to a depth of approximately 120 feet . . . ".

They further allege that said representations were relied upon; that they were false and made with intent to deceive and defraud defendants, and that they were damaged by reason thereof in the sum of $300. Their prayer was "that plaintiff take nothing, and defendants be discharged with their costs. . . . "

At the close of the evidence, upon stipulation of the parties, the jury was dismissed and the matter submitted to the court for decision.

The court first found the issues in favor of defendants and directed judgment accordingly. Thereafter a motion by plaintiff to set aside such judgment and to enter judgment for him was granted, and it is from such order and judgment the appeal is taken.

It will be observed that the only issue made by the pleadings in the case is the one presented by the answer of defendants, in which they charge the plaintiff with fraud in misrepresenting the depth of the well, and the portion thereof that was dug and cemented, and the portion that was drilled. In other words, the defendants admit the allegations of the complaint, but would avoid the performance of their agreements to pay note on the grounds of fraud.

It appeared at the trial that the $250 note represented Daily & Boyd's commissions as brokers for negotiating the sale of said lot 16 from Tourigny to the Robsons, and was deducted from the sale price. While nominally the price was $2,500, it in fact was $2,250, the seller of lot 16 paying the commission and not the buyer.

But, it is now contended by defendants, that plaintiff before he may recover must not only allege, but prove, that the partners Daily & Boyd were licensed brokers, or salesmen, at the time, as provided by section 67–1730, Arizona Code Annotated 1939. That might be true under a different state of facts. It happens in this case that neither in the complaint nor in the answer is there an allegation that the note is for broker's commissions. On its face it might be for money loaned or other valuable consideration. We think the fact that the note was for broker's commissions should appear either in the complaint, or be raised by the defendants' answer. Defendants should

not be permitted to raise the question for the first time on appeal. If it had been raised at or before the trial, the plaintiff might have, and in this case could have, it appears, amended his complaint to show that both Daily and Boyd were licensed brokers at the time of the transaction.

The defendants next complain of the court's ruling denying them the right to testify to the alleged fraudulent representations made by the deceased partner Boyd as to the portion of the well that was drilled and the portion that was dug and cemented.

The court based its ruling rejecting the evidence of the defendants upon section 23–105, Arizona Code Annotated 1939, which reads as follows:

*"Limitations to testimony in actions by or against personal representatives.*—In an action by or against executors, administrators or guardians, in which judgment may be rendered, for or against them as such, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate or ward unless called to testify thereto by the opposite party or required to testify thereto by the court, and the provisions of this section shall extend to and include all actions by or against the heirs, devisees and legatees or legal representatives of a decedent arising out of any transaction with such decedent."

This section is word for word from Texas, Vernon's Ann. Civ. St. art. 3716, except the Texas statute does not contain the words "devisees and legatees" that are in our statute.

We believe that our statute was taken from Texas, as it first appears in the Revised Statutes of Arizona in 1887, as section 1865 thereof, in the same language as in the Texas statute.

■■ The action is by the surviving partner of W. D. Boyd, and is brought for the purpose of collecting the described note. The question to decide is

whether a surviving partner, as such, is the "legal representative" of the decedent partner. If he is, the evidence was properly ruled out. If he is not, we think the offer by the defendants should have been allowed. In *Shivel & Stewart* v. *Greer Bros.*, 58 Tex. Civ. App. 115, 123 S. W. 207, it was said:

" . . . The statute of the state expressly denies the right to a party to the suit to testify against the opposite party, unless called thereto by such opposite party, in 'all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent' as to 'any transaction with or statement by' the decedent. Rev. St. 1895, § 2302 [Vernon's Ann. Civ. St. art. 3716]. If this evidence should be held as being inhibited by the statute, it would have to be upon the ground that this suit was an action by 'a legal representative of a decedent,' within the terms and meaning of the statute. We do not think that it could properly be so held in this case. The suit in the instant case was by the surviving partner, as such, for the use and benefit of the copartnership, on a copartnership debt. He was not, we think, in the suit legally representing, in a distinctive personal capacity, the deceased. For the purpose of closing up the firm business, and no further, the surviving partner has the right of possession of the firm property, as against the heirs or representatives of the deceased partner, and can sue as such surviving partner. *Fulton [Hensley & Co.]* v. *Thompson*, 18 Tex. 278. It is because he has the right of possession for such purpose that he can sue for the use and benefit of the firm after the death of his partner. In this case no judgment is sought, or can be obtained, against the estate of the deceased—only against the partnership assets and the surviving partner; and it is not necessary in such case to make the deceased's heirs parties. *Davis* v. *Schaffner*, 3 Tex. Civ. App. 122, 22 S. W. 822.

"The authority, therefore, of the surviving partner to sue for the firm debt or claim in the case is predicated upon and solely arises out of the partnership,

as an incident of his right and obligation to properly wind up the partnership business, in which he has a property interest. By the suit the surviving partner neither acquires nor succeeds to any right of the decedent in the debt sued for, nor does he acquire any right in the debt under the deceased, nor does the estate of the deceased under him acquire any right in the debt. The debt is due to the partnership as such. It might be true that it is the duty of the surviving partner to properly account to the estate of the deceased for partnership assets; but that duty would not alone, we think, constitute a suit by him a suit as the legal representative of the deceased in the meaning of the statute. . . . "

The action not being for or against the legal representative of the deceased partner, the testimony of the defendants in support of their defense should have been admitted, and because of its exclusion the case is remanded for further proceedings, in accordance with this opinion. The value of such testimony, in view of all the circumstances, is for the determination of the court or jury.

McALISTER, C. J., and STANFORD, J., concur.